UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTOPHER IVEY & EUGENE BANKS, | CIVIL NO. 18-CV-1429 (PAM/DTS) |
| Plaintiffs, | |
| v. | REPORT AND RECOMMENDATION |
| NANCY JOHNSTON, | |
| Defendant. | |

Christopher Ivey & Eugene Banks, Minnesota Sex Offender Program, 1111 Highway 73, Moose Lake, MN 55767, pro se.

James H. Clark III, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55401, for Defendant.

## INTRODUCTION[1]

Plaintiffs Christopher Ivey and Eugene Banks, civilly committed residents of the Minnesota Sex Offender Program ("MSOP"), are suing the Program's Executive Director, both in her personal and official capacity, for alleged First Amendment and state constitutional violations. Stating their desire to be informed voters in the upcoming November elections, Plaintiffs request a preliminary injunction requiring MSOP to give them access to certain internet websites and television channels not currently available to Program residents. Because Plaintiffs have not established a likelihood of success on the merits of their claim or that an irreparable injury will result if no injunction is issued, their motion is denied.

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

**FINDINGS OF FACT**

The Minnesota Sex Offender Program is a statutory program operating under the auspices of the Minnesota Department of Human Services. Compl. ¶ 3, Docket No. 1; Minn. Stat. § 246B.02. MSOP provides "specialized sex offender assessment, diagnosis, care, treatment, supervision, and other services to civilly committed sex offenders . . . ." Minn. Stat. § 264B.02.

Plaintiffs Ivey and Banks are residents of the MSOP facility in Moose Lake, Minnesota, one of two MSOP residential facilities. Compl. ¶¶ 2-3. Each was civilly committed to MSOP after completing criminal sentences. *Id.* at ¶¶ 2, 10. Neither is subject to any continued limitations to their civil rights stemming from these prior criminal convictions. *Id.* at ¶ 10; Banks Aff. ¶ 2, Docket No. 3; Ivey Aff. ¶ 2, Docket No. 4. For example, both Plaintiffs can, and have, voted in elections while committed at MSOP. Compl. ¶¶ 10-11. Banks has even staged a write-in campaign for mayor of Moose Lake, receiving 74 votes. Banks Aff. ¶ 4.

Ivey and Banks filed the present lawsuit in May 2018. Plaintiffs challenge two apparently unwritten MSOP policies on free speech grounds. First, they challenge MSOP's policy of prohibiting residents from accessing the internet in any manner. *Id.* at ¶¶ 6, 25-29. Second, Plaintiffs argue that MSOP is violating their rights by selectively restricting which channels they may view. *Id.* at ¶¶ 20, 30-32. Specifically, Plaintiffs note that MSOP blocks "PBS 3, MN Channel (a PBS-produced channel), C-SPAN 3, and the local access channel carried by Mediacom." *Id.* at ¶ 20. MSOP does not deny that it carries out such policies, but contends that both serve public safety and therapeutic

needs. Hébert Aff. ¶¶ 4-6, Docket No. 34. Defendant Johnston has not yet answered the Plaintiffs' Complaint, but instead has filed a motion to dismiss the claims.

## CONCLUSIONS OF LAW

Pending the resolution of the merits, Plaintiffs request a preliminary injunction requiring MSOP to provide much of the injunctive relief sought in their Complaint, ostensibly limited to that relief which would aid them in becoming informed voters. Pl.'s Mem. L. Supp. Mot. Prelim. Inj. ("Pl.'s Mem.") 41-42, Docket No. 12; Compl. ¶¶ 34-35. They implore the Court to grant the preliminary relief in time for the November 6 general election. However, Ivey and Banks cannot demonstrate that "the balance of equities so favors" them that this Court must intervene before the merits may be reached. *See Minn. Vikings Football Stadium, LLC v. Wells Fargo Bank*, 157 F. Supp. 3d 834, 839 (D. Minn. 2016). So, their motion is denied.

### I.     Legal Standard

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). That burden becomes higher still when, as here, the movants seeks to alter the status quo and gain relief akin to what they ultimately seek through a permanent injunction. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993).

A court deciding whether to grant a preliminary injunction considers four well-known factors: (1) the movants' likelihood of success on the merits; (2) the irreparable harm the movants may face without the injunction; (3) the balance of harms between the movants and the non-movant if the injunction issues; (4) and any public interest that

may be served or hindered by the injunction. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981). In a case implicating the First Amendment, the question of irreparable harm effectively becomes one of likelihood of success on the merits. *See Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (concluding that where plaintiff could not demonstrate the likelihood of success on the merits of a First Amendment claim, he could not demonstrate a threat of irreparable harm).

## II.     Likelihood of Success on the Merits

At a minimum, Ivey and Banks must demonstrate that their case is likely to succeed on the merits. In the Eighth Circuit, this "is the most important of the four *Dataphase* factors." *Minn. Vikings*, 157 F. Supp. 3d at 841. Although Plaintiffs argue that they need only demonstrate that they have "a fair chance of prevailing on [their] claims," *Powell v. Noble*, 798 F.3d 690, 698 (8th Cir. 2015), the limited record available suggests they face a difficult road to success.

### A.     State Constitutional Claims

Despite listing only two causes of action, Plaintiffs' Complaint is more properly read to state four claims, as each of their "causes of action" raises a free speech question under both the United States and Minnesota Constitutions. Compl. ¶¶ 25-32. That being noted, Minnesota does not recognize a private cause of action for violations of state constitutional rights as the federal government has done by providing § 1983 causes of action. *Eggenberger v. West Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016) (citing state and federal cases). Thus, to the extent that Plaintiffs seek relief under the Minnesota Constitution, it is unlikely they would survive a motion to dismiss, let alone ultimately be successful on the merits.

4

Were the claims to survive a motion to dismiss, the merits analysis is identical to that governing Plaintiffs' First Amendment claims. *See Minnesota v. Wicklund*, 589 N.W.2d 793, 799 (Minn. 1999) (Finding that, where there was no evidence of enacting intent to the contrary, the state's free speech provision was best read as coextensive with the First Amendment). Although the Minnesota Supreme Court recognizes its authority to read state constitutional provisions more broadly than their federal counterparts, *id.* at 798, Plaintiffs provide no argument that a state court would do so. The conclusions the Court draws next regarding the First Amendment claims thus apply equally to Plaintiffs' state free speech claims.

### B.   First Amendment Claims

Plaintiffs have almost as great a challenge awaiting their free speech claims under the United States Constitution. Both Ivey and Banks are aware of many of these hurdles, as each has brought prior lawsuits raising similar legal and factual issues. *See Banks v. Jesson*, Civ. No. 11-1706 (SRN/JSM), 2016 WL 3566207 (D. Minn. June 27, 2016) (challenge to restrictions on computer, email, and internet usage); *Banks*, 2011 WL 6292133 (D. Minn. Nov. 3, 2011), *report and recommendation adopted by* 2011 WL 6275960 (D. Minn. Dec. 15, 2011) (challenge to restrictions on television channels); *Ivey v. Mooney*, Civ. No. 05-2666 (JRT/FLN), 2008 WL 4527792 (D. Minn. Sept. 30, 2008) (challenge to statute prohibiting sexually dangerous persons at MSOP from possessing obscene material). Though the Court cannot, on a limited record, completely foreshadow the merits of the case, some observations are necessary.

Lurking in the background of any civil rights action Plaintiffs may bring is their status as civilly committed dangerous persons. The Eighth Circuit has held that such

5

involuntarily committed individuals have liberty interests "considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). It has further held that involuntary commitment "may necessitate restrictions on the right to free speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1038-39 (8th Cir. 2012) (challenge to MSOP telephone policies). When considering constitutional claims brought by a civilly committed person, courts in this District have applied a modified version of the test announced by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), which originally applied to prisoners.[2] *See, e.g., Ivey*, 2008 WL 4527792, at *4-5. *Turner* places the burden on Plaintiffs to show, among other things, that a challenged policy lacks a "valid rational connection" to a legitimate government interest and that the challengers lack "an alternative means of exercising [their] constitutional right." *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004).

Given the *Turner* standard, it appears unlikely that Plaintiffs will be able to meet their burden. MSOP's Executive Clinical Director has stated that the Program's internet ban and television channel restrictions serve to protect minors and ensure that clients are not exposed to "counter-therapeutic stimuli." Hébert Aff. ¶¶ 4-6. Although the record at this point is under-developed and conclusory, this limited evidence suggests a valid rational connection to two legitimate government interests.

Similarly, the record suggests that Ivey and Banks do not lack an alternative means of exercising their free speech rights. MSOP maintains policies that allow

---

[2] Plaintiffs argue that the *Turner* test is not the appropriate standard to apply at this stage, as the preliminary relief sought is limited to politically-related speech. Pl.'s Mem. 15. Even if the distinction between "politically-related speech" and other speech is meaningful, the Court examines the merits of the *case*, not the merits of the injunctive relief sought.

6

residents to send and receive letters, as well as place and receive telephone calls. Geil Aff. Exs. A, B, Docket No. 35. Ivey and Banks strenuously argue that, in the modern world, these methods of communication are simply inadequate compared to the internet or even television. Pl.'s Mem. 21-26. It may well be true that television and the internet are more effective means of conveying speech. But in the context of those who have forfeited some level of their civil rights, "[a]lternatives to the type or amount of speech at issue 'need not be ideal . . . they need only be available.'" *Holloway v. Magness*, 666 F.3d 1076, 1080-81 (8th Cir. 2012) (finding that a prison's policy of charging inmates for phone calls did not violate the First Amendment).

Plaintiffs contend that this current lawsuit differs from their prior litigation because of the Supreme Court's recently issued holding in *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017). At issue there was a statute prohibiting a registered sex offender who had otherwise completed his criminal sentence from accessing a social networking website when the offender knew the site permitted minors to be members. *Id.* at 1733. Applying intermediate scrutiny, the Supreme Court struck down the statute for violating the First Amendment. *Id.* at 1738. Both the majority and the concurrence concluded that the statute's definition of "commercial social networking Web site" was overly broad and thus insufficiently tailored to serve the government's compelling interest in protecting minors. *Id.* at 1736-37; *Id.* at 1738 (Alito, J., concurring).

Ivey and Banks argue that the reasoning in *Packingham* applies to MSOP's total restriction on internet access, and so they are likely to succeed on this claim. But this conclusion is too speculative. It is true that Plaintiffs, like the petitioner in *Packingham*, have completed their criminal sentences. However, unlike Packingham, they are civilly

7

committed, and as such are subject to additional restrictions on their liberty. *Senty-Haugen*, 462 F.3d at 886. MSOP also has an additional compelling interest in providing effective therapy to its residents, an interest not at issue in *Packingham*. Finally, it is unclear, and Plaintiffs do not explain, whether a statute which criminalizes otherwise legal speech is sufficiently similar to a government policy that does not create access to the forum. *See Holloway*, 666 F.3d at 1079-80 (noting that a prison "had no First Amendment obligation to provide any telephone service" to inmates). For these reasons, the Plaintiffs have not demonstrated a likelihood of success on the merits for their First Amendment claim against MSOP's internet restrictions.

As to their claim regarding MSOP's television channel restrictions, Plaintiffs make no specific argument regarding their chance of success, focusing their analysis only on the sweeping internet ban. *See* Pl.'s Mem. 17-38. Because Plaintiffs, as movants, bear the burden of proof on this motion, the Court cannot conclude that Ivey and Banks are likely to succeed on the merits of their television channel cause of action.

### III.    Threat of Irreparable Injury

Plaintiffs must also demonstrate that they are likely to suffer an irreparable injury, i.e., an injury which cannot be made whole by a damages remedy, if preliminary relief is not granted. *Watkins, Inc.*, 346 F.3d at 844. A failure to show irreparable harm warrants denial of a preliminary injunction. *Id.* Based upon the record, Plaintiffs cannot satisfy this showing.

Plaintiffs argue that a preliminary injunction is warranted because MSOP's current policies violate both their freedom of speech and their right to vote. There is no question that a free speech violation creates an irreparable injury. *Elrod v. Burns*, 427

U.S. 347, 373 (1976). But where a movant "is unlikely to succeed in showing his First Amendment rights have been violated," he has likely "not shown a threat of irreparable harm that warrants preliminary injunctive relief." *Powell*, 798 F.3d at 702. As explained above, Plaintiffs are unlikely to succeed on the merits of their First Amendment claims. Given that Ivey and Banks largely request the relief they seek on the merits of the case, their First Amendment argument cannot support a finding of irreparable injury.

As to their assertion that allowing MSOP's policies to continue creates an irreparable injury by violating their right to vote, Plaintiffs offer no compelling support. All of the caselaw cited by Plaintiffs concerns policies which, if not enjoined, would have impaired an otherwise qualified voter's right to actually cast a ballot or have it count. *See* Pl.'s Mem. 39. But MSOP allows residents to vote absentee, if they are otherwise qualified. Geil Aff. Ex. C. Neither Ivey nor Banks denies this, having voted while committed to MSOP. Compl. ¶¶ 10-11. Plaintiffs do no provide, in either their briefing on this motion or in their Complaint, legal support for the proposition that the right to vote entails a right to be an "informed voter."[3] Nor can this Court, particularly on a motion for preliminary injunction, find such a nebulous concept in the Constitution or precedent.[4] Without a viable basis for this alleged right, Plaintiffs cannot show that they will be irreparably harmed by casting their ballots without all of the information available via internet or cable television.

---

[3] In their response to Johnston's motion to dismiss, Plaintiffs cite cases extolling, generally in dicta, the value of an informed electorate. Pl.'s Resp. Def.'s Mot. Dismiss 4-6, Docket No. 32. The Court echoes these sentiments. However, none of cases identifies an actual right to be an informed voter, either.

[4] Even if Plaintiffs had a cognizable right to be informed voters, they have not demonstrated how such a right is violated when, as noted, alternative channels of information remain available to them.

## CONCLUSION

Plaintiffs have failed to demonstrate irreparable injury or even a likelihood of success on the merits. The Court need not linger on the remaining two *Dataphase* factors, as they "necessarily turn on whether there has been a showing that the plaintiff's constitutional rights have been violated." *Occupy Minneapolis v. County of Hennepin*, 866 F. Supp. 2d 1062, 1067 (D. Minn. 2011); *see also Powell*, 798 F.3d at 702. Because they cannot demonstrate that a balance of the equities favors granting preliminary relief, Plaintiff's motion for a preliminary injunction is denied.

## RECOMMENDATION

For the reasons set forth above, the Court recommends that Plaintiffs' Motion for Preliminary Injunction [Docket No. 11] be DENIED.

Dated: October 15, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).