UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Ivey,           Civ. No. 18-1429 (PAM/DTS)

    Plaintiff,

v.           **MEMORANDUM AND ORDER**

Nancy Johnston,

    Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons set forth below, Defendant Nancy Johnston's Motion is granted and Plaintiff Christopher Ivey's Motion is denied.

**BACKGROUND**

The full factual background has been set forth in previous rulings and need not be repeated here. (Docket Nos. 40, 43, 61, 63.) In brief, Plaintiff Christopher Ivey is a civilly committed resident of the Minnesota Sex Offender Program ("MSOP"). Plaintiff brings a single-count Amended Complaint alleging that MSOP policies banning clients from accessing the internet are overly broad and unlawfully restrict his First Amendment rights under the United States Constitution. He seeks an injunction against MSOP's ban on client internet use, "a declaration that the acts and omissions of Defendant . . . violate Plaintiff's rights under the U.S. Constitution," a "court order outlining the general and/or specific boundaries of what level of access to internet platforms and related technologies which cannot be blocked at MSOP," and access to email, social-media websites, and other various

websites.  (Am. Compl. (Docket No. 70) ¶¶ 36-37; Pl.'s Ans. to Interrog. (Docket No. 81-Ex. 2) at 8-9.)

The parties now cross-move for summary judgment.  Defendant contends that there is no genuine dispute of material fact regarding the constitutionality of MSOP's internet policies.  Plaintiff argues that MSOP's internet policies violate his First Amendment rights because he cannot interact with others via social media, contact political candidates and elected officials, and access other political and news information online.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Supreme Court determined that a prison regulation "is valid if it is reasonably related to legitimate penological interests."  Turner v. Safely, 482 U.S. 78, 89 (1987).  Courts in this District have applied a modified version of the test announced by the Supreme Court in Turner, when considering constitutional claims of a civilly committed

person. See Karsjens v. Piper, 336 F. Supp. 3d 974, 992 (D. Minn. 2018). Specifically, Courts use a four-factor test to determine whether an MSOP policy is reasonably related to valid penological interests: (1) whether MSOP's policy bears a "valid, rational connection" to legitimate institutional and therapeutic interests; (2) "whether there are alternative means of exercising the right;" (3) the impact that the accommodation would have on MSOP, its resources, staff, and other clients; and (4) whether simple and cost-effective alternatives exist that meet the program's objections. Turner, 482 U.S. at 89-90; see also Banks v. Jesson, No. 11cv1706, 2017 WL 1901408, at *8-9 (D. Minn. May 8, 2017) (Nelson, J.) (applying the modified Turner test to evaluate an MSOP client's constitutional claims).

MSOP clients are civilly committed as "sexual psychopathic personalities" and "sexually dangerous persons." (Def.'s Opp'n Mem. (Docket No. 100) at 9.) Such individuals have "considerably less [liberty interests] than those held by members of free society." Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). "The rehabilitation of sex offenders and institutional security of MSOP are legitimate government interests under Turner." Banks, 2017 WL 1901408, at *8. Defendant maintains that "allowing clients at MSOP to have internet access would undoubtedly be detrimental to the rehabilitation of MSOP clients and the security of MSOP." (Id. at 16.) Thus, MSOP prevents clients from using the internet because some MSOP clients would use the internet to: (1) communicate with minors and other vulnerable individuals, (2) contact their victims or victim's families, (3) plot escapes, (4) stalk, abuse, and harass others, (5) access counter-therapeutic stimuli, and (5) participate in criminal activity. (Hébert Decl. (Docket No. 82) ¶ 4.)

3

Plaintiff fails to demonstrate that MSOP's ban on internet use is not rationally related to legitimate and institutional therapeutic interests, as Turner requires.[1] To the contrary, Plaintiff concedes that MSOP clients would likely engage in the activities that MSOP's internet-ban seeks to prevent if given unrestricted internet access, and that there is no way to provide MSOP clients internet access without risk of clients doing so. (Ivey Dep. (Docket No. 81-1) at 27-29.)

Moreover, Plaintiff does not contest that he has alternative means of accessing information found on the internet. In particular, he seeks access to the internet for information related to politics, political candidates, and elected officials. Plaintiff acknowledges that he has access to mail, telephone, newspapers, magazines, radio, and some television channels. (Def.'s Opp'n Mem. at 15.) Additionally, Plaintiff's friends and family may print information from the internet and mail it to him. (Ivey Dep. at 38.) Plaintiff indeed admits that his stepfather has conducted internet research for him. (Pl.'s Resp. Mem. (Docket No. 101) at 19 n.5.) And Plaintiff has contacted politicians via mail, without difficulty. (Ivey Dep. at 15.)

Although Plaintiff seeks more convenient access to information found on the internet, he provides no authority that convenience is the constitutional standard. Because information, including political information, is readily available in the mediums to which

---

[1] Plaintiff persists in his view that MSOP's internet policy is unconstitutional under Packingham v. North Carolina despite the Court's previous Order (Docket No. 43) advising him otherwise. Packingham does not apply to Plaintiff, as he is civilly committed and subject to different standards than the individuals discussed in that case. Packingham v. North Carolina, 137 S. Ct. 1730 (2017).

Plaintiff has access, he has sufficient "alternative means" for accessing information.  See Murchison v. Rogers, 779 F.3d 882, 891 (8th Cir. 2015.)  Plaintiff fails to meet his burden under the second Turner factor.

Plaintiff proposes MSOP clients should be granted at least limited internet access, but he utterly fails to demonstrate that such an accommodation would satisfy the third and fourth Turner factors.  See Ivey v. Mooney, No. 05cv2666, 2008 WL 4527792, at *13 (D. Minn. Sept. 30, 2008) (Tunheim, J.).  He contends that MSOP clients should be granted internet and email access in a similar manner to that of MSOP staff.  (Am. Compl. ¶ 23.) But MSOP staff members are given internet access as their job duties dictate; MSOP clients have no such reason to access the internet.  (Luhman Decl. (Docket No. 84)  ¶ 7.)

Without submitting evidence to support his claim, Plaintiff asserts that MSOP can purchase technology that would allow MSOP clients to access certain websites while blocking access to other websites.  (Pl.'s Resp. Mem. (Docket No. 101) at 13.)  MSOP, however, cannot purchase the technology that Plaintiff describes because no technology exists that would allow MSOP to monitor client communications in real time.  (Hébert Decl. ¶ 17.)

Further, Plaintiff suggests that MSOP staff members could monitor clients' internet use in real time, yet presents no evidence or expert testimony that such supervision would not unreasonably burden MSOP.  See Fed. R. Civ. P. 56(c)(1)(A).  In-person monitoring of client internet use is not a feasible accommodation because of the impact it would have on MSOP, its staff, its resources, and other MSOP clients.  (Luhman Decl. ¶¶ 12, 17-26.) Notably, such real-time monitoring would not prevent MSOP clients from viewing

5

counter-therapeutic content, participating in criminal activity, or communicating with minors, vulnerable individuals, victims, and their families—it would only punish clients after the fact. (Johnston Decl. (Docket No. 83) ¶ 24, Luhman Decl. ¶ 24.)

Likewise, Plaintiff presents no simple and cost-effective alternative that would provide MSOP clients internet access and also meet MSOP's objectives. Plaintiff fails to demonstrate that there is any genuine material fact in dispute as to the constitutionality of MSOP's internet policies under the Turner standard.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Docket No. 78) is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment (Docket No. 89) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 13, 2021

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge